■ DANIEL R. EHRLICH et al., Copartners Doing Business under the name of DANIEL R. EHRLICH & Co. Respondents, v ABRAMS INSTRUMENT CORP., Appellant.—Judgment, Supreme Court, New York County, entered January 16, 1976 in the sum of $96,216.15 in favor of plaintiffs, granted on plaintiffs' motion, made at the conclusion of a jury trial, upon the ground plaintiffs were entitled to a judgment as a matter of law, reversed, on the law, and a new trial granted, with $60 costs and disbursements of this appeal to abide the event. In this action to recover money loaned and insurance premiums advanced by plaintiffs, on defendant's behalf, defendant interposed as an affirmative defense that plaintiffs had executed and delivered a written release of the very claims which form the basis for this action. The six signatories to the release agreement (Suisse-O-Matic Mfg. Corporation, American Moninger Greenhouse Mfg. Corporation, J. A. Maurer, Inc., Precision Film Laboratories, Inc., plaintiffs and defendant) had theretofore sold and purchased various goods and services from one another and had also advanced funds to one another. The net effect of the agreement was a debt running from Maurer to the defendant. As expressed in a whereas clause of the agreement it was "the desire of the parties to arrive at such net effect so that Abrams shall not be indebted to any of the parties hereto and that the only party hereto indebted to Abrams shall be Maurer in the amount of $84,001.37, all such debts to be paid in connection with a Registration Statement to be filed by Abrams with the Securities and Exchange Commission". In pertinent part the agreement also provides: "2. Moninger, Ehrlich and Suisse agree and hereby do release Abrams from any liability presently severally due them from Abrams and agree to this novation whereby Maurer is substituted in all respects as the obligor for any sums previously due by Abrams to any party hereto." "5. Maurer agrees to pay to Abrams upon the closing of a certain Registration State-ment of Abrams which includes 150,000 shares of Abrams' stock being sold by Maurer to the public (the Closing), the sum of $84,001.37, less any sums paid by Maurer to Abrams between the date of this Agreement and the Closing and plus any sums that should become due to Abrams from Maurer between the date of the Agreement and the Closing." Appellant claims the agreement is an unconditional novation which took effect immediately and therefore its debt to the plaintiffs had been extinguished. Respondents urge, as the court below held, that the agreement was subject to a condition precedent which concededly had not been fulfilled, namely that the registra-tion statement be closed. The language of the agreement is equivocal. Paragraph 2 speaks in terms of a present release of the defendant and

paragraph 5, to the extent it makes allowance for any sums paid by Maurer to Abrams between the date of the agreement and the closing, further suggests the absence of a condition precedent. Yet, as appears from the dissent, an equally plausible argument can be made for the existence of a condition precedent. While the interpretation of written contracts is ordinarily for the court alone, where, as here, the meaning of the agreement is ambiguous, its construction is a fact issue to be presented to the jury to resolve. (*O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50; 10 NY Jur., Contracts, § 190.) The fact that prior to the trial court's ruling both parties, though each pressing for a different interpretation, urged the agreement was unambiguous and therefore only a question of law was presented, is not controlling. Concur—Kupferman, Capozzoli and Yesawich, JJ.; Stevens, P. J., and Murphy, J., dissent in the following memorandum by STEVENS, P. J.: Stevens, P. J. (dissenting). I dissent and would affirm the judgment appealed from. This is an action to recover money loaned and insurance premiums advanced by plaintiff on behalf of defendant-appellant Abrams Instrument Corp. (Abrams). It is conceded that the sum of $64,000 was transferred by bank debit from plaintiff to Abrams and that approximately $8,000 in insurance premium advances remains unpaid. Abrams in its verified answer, in addition to general denials, pleads the affirmative defenses of release and Statute of Limitations. Addressing first Abrams' defense of Statute of Limitations, that defense must fail since, although the loans were made in 1968, Abrams by letter dated January 13, 1971, acknowledged the indebtedness. The letter signed by Abrams' vice president and comptroller stated in pertinent part, "[a]t December 31, 1970 our records showed $72,302.00 due you." This writing signed by the part to be charged was sufficient to toll the Statute of Limitations (General Obligations Law, § 17-101). Generally, in the absence of a recognized legal barrier, there is implicit in the existence of any loan, the obligations to repay. The second affirmative defense contends that Abrams was released from any obligation to repay the indebtedness by reason of an agreement, dated January 24, 1969, between plaintiff, Abrams and three other corporations in which plaintiff directly or indirectly had some measure of interest. However, reading the document as a whole, as we must, establishes that there was a condition precedent to the release of Abrams from liability for payment of its obligation to plaintiff. After listing sums due to and from Abrams and the other signatories to the agreement, the parties, in one of the "whereas" clauses, expressed a desire "to arrive at such net effect so that Abrams shall not be indebted to any of the parties hereto and that the only party hereto indebted to Abrams shall be Maurer [J.A. Maurer Inc.] in the amount of $84,001.37, all such debts to be paid in connection with a Registration Statement to be filed by Abrams with the Securities and Exchange Commission." Maurer agreed to assume the indebtedness and while the parties thereafter professed to "agree to this novation", the language which followed assumes especial significance when read in conjunction with the earlier "whereas" clause. Maurer agreed "to pay to Abrams upon the closing of a certain Registration Statement of Abrams which includes 150,000 shares of Abrams' stock being sold by Maurer to the public (the 'Closing'), the sum of $84,001.37", a figure which included the Abrams' indebtedness to plaintiff. It has been stipulated that there never was a closing or any public share offering. Thus, there was a total lack of consideration for either the discharge of Abrams or the assumption of indebtedness by Maurer. Obviously, the parties did not intend to consider a default by Abrams as a trigger to release Abrams from its obligations. In

fact, during trial Abrams' counsel noted that the agreement spoke for itself and that there was a question of law for the court to pass upon as to whether there was a precedent condition. The court, in granting plaintiff's motion for judgment, found and determined that there was such a condition precedent to the release of Abrams from its liability to plaintiff, and such condition was never met. As noted earlier, Abrams in its letter of January 13, 1971, almost two years after the signing of the release, recognized the continued existence of the debt, thus lending further support to the trial court's determination.