**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor of the Estate of Darryl F. Zanuck, Deceased, Plaintiff,**

v.

**Genevieve GILLAIZEAU, Defendant.**

**No. 83 Civ. 6175 (GLG).**

United States District Court,
S.D. New York.

Aug. 29, 1984.

Burns, Summit, Rovins & Feldesman, New York City, for plaintiff; Michael G. Shannon, Jonathan F. Horn, New York City, of counsel.

Thomas Fitzpatrick, New York City, for defendant.

## OPINION

GOETTEL, District Judge.

Before the Court are cross-motions for summary judgment.[1] The ultimate issue to be decided is whether or not the defendant, Genevieve Gillaizeau ("Gillaizeau"), owes approximately $50,000 to the plaintiff, Bank of America National Trust Savings

Association (the "Bank"), in its capacity as executor of the estate of Darryl F. Zanuck ("Zanuck"). This question, in turn, depends on whether Zanuck loaned, rather than gave, Gillaizeau stock worth the same value, and, if so, whether he subsequently released her from any obligation to repay the loan. For reasons outlined below, the Court determines that Zanuck did make a loan, not a gift, and that during his lifetime he did not release her from the obligation to repay the loan.

FACTS

Both parties agree that the following facts are true and not in dispute.

The Court has subject matter jurisdiction, under 28 U.S.C. § 1391 (1982), by virtue of the diversity of citizenship of the parties and the amount in controversy. The Bank is a citizen of California and Gillaizeau a citizen of New York. The exact amount in controversy is $50,987.60, exclusive of interest.

In June of 1969, Zanuck purchased in the name of Gillaizeau 1,000 shares of Twentieth Century-Fox stock at a price of $30,591.30. In August of 1969, he purchased in her name an additional 1,000 shares at a price of $20,396.30. At the time of the second purchase, Zanuck advised the Comptroller of Twentieth Century-Fox Film Corporation that the purchase was being made as a loan to Gillaizeau.

Apparently in connection with this transaction between Zanuck and Gillaizeau, they signed a document on August 28, 1969, which provides:

Dear Genevieve:

It is our mutual understanding and agreement on the two purchases of 20th Century-Fox stock which I made for your benefit, that when you sell the stock you will reimburse me for the cost of the stock (which I believe averages out at somewhere around $50,900), but that the profit at the time of sale will be entirely yours.

---

1. These cross-motions were considered once before and were denied because of what the Court perceived to be material issues of fact. The cross-motions are being reconsidered at the request of both counsel, who have submitted a stipulation of facts which resolves those issues.

I am merely drawing this up as a memorandum in case death should occur to either one of us—but, I trust we will live to be a hundred.

> Love,
> /s/ Darryl F. Zanuck

Agreed and Accepted:

By /s/ Genevieve Gillaizeau

Both parties acknowledge that this document is unambiguous. Gillaizeau, however, alleges that Zanuck told her that it was needed for his "tax purposes" only. Although she denies that Zanuck ever suggested, or that she ever thought, that he might be referring to a desire to avoid paying the federal gift tax, both parties appear to agree in retrospect that this is what he must have meant if indeed he did make the statement Gillaizeau attributes to him. While not admitting or denying that he made such a statement, the Bank contends that testimony concerning the statement would be inadmissible under the parol evidence rule. The Bank claims that the August 28th document embodies the full agreement between Zanuck and Gillaizeau, and that it clearly and unambiguously shows that he loaned, not gave, her the stock. While admitting that the document by itself indicates that a loan was made, Gillaizeau argues that her parol evidence is admissible to prove that neither she nor Zanuck ever intended to enter into the agreement expressed in the document.

Whether or not such evidence is admissible is the first issue to be decided. If it is determined that the evidence is admissible, then the Court must consider a second issue—whether any obligation to repay Zanuck was forgiven during his lifetime by means of an *inter vivos* release. The facts out of which this question arises are as follows.

On October 8, 1970, a little more than a year after Zanuck and Gillaizeau signed the above agreement, Zanuck wrote the following note:

Dear Genevieve:

> When the girls were preparing the material for my Last Will and Testament, they found in my files a letter dated August 28, 1969.

> This letter, of course, is invalidated completely and is superseded by my Last Will and Testament.

> Love,
> /s/ Darryl F. Zanuck

This note is the first key document that Gillaizeau relies upon as evidence of an *inter vivos* release. The Bank argues, though, that the note shows nothing more than Zanuck's intention to include in his will a clause forgiving her the debt.

At the time of the note, Zanuck's last executed will, dated August 7, 1970, did not contain any provision forgiving the debt. Nor did his later executed wills of October 27, 1970, and September 20, 1971. However, on or about January 27, 1972, he executed a codicil to the latter will, which included a provision forgiving Gillaizeau and certain other individuals any debts they owed him.

The day before, Zanuck had written her a note, which reads in its entirety:

Dear Genevieve:

> In going through my financial files I came across three letters which I am enclosing in this letter.

> The first letter is dated October 8, 1970 and speaks for itself.

> The letter dated November 15, 1971 is hereby cancelled in its entirety.

> The same applies to a letter dated November 6, 1970.

> In other words, you are not indebted to me for any of the matters referred to in any of these letters.

> Best always,
> /s/ Darryl F. Zanuck

Although the third and fourth paragraphs of this letter refer to debts not relevant to this discussion, the second paragraph clearly refers to the first note (of October 8, 1970) concerning the August 28, 1969, document. The Bank argues that this reference and the final paragraph were intended to do no more than inform Gillaizeau that the debt had been forgiven in his will, as the October 8, 1970, note promised. Gil-

laizeau focuses primarily, if not exclusively, on the final paragraph of the second note, and argues that it unambiguously conveys a present intention to release her from the debt as of either October 8, 1970, or October 28, 1972, when the second note was signed.

On October 31, 1973, Zanuck executed what was subsequently admitted to probate as his last will. It contained the following provision.

I HEARBY FORGIVE all debts that may be owed to me at my death by each of the following who shall survive me, and by the estate of each of the following who shall not survive me:

1. My daughter, SUSAN MARIE SAVINEAU.

. . . . .

6. GENEVIEVE GILLAIZEAU. Such forgiveness with respect to said GENEVIEVE GILLAIZEAU shall specifically include (but shall not be limited to) any debt owed to me by her pursuant to a certain letter agreement between us dated August 28, 1969, relating to the purchase of certain shares of Twentieth Century-Fox Film Corporation.

Thus, his last will contained a specific provision expressly forgiving her the debt in question. The will also contained, as had all of Zanuck's prior wills, an *in terrorem* clause under which any beneficiary or legatee who attempted to challenge any provision of the will would no longer be entitled to his or her interest or legacy.

A number of years later, in December of 1979, Zanuck died. On March 3, 1980, his will of October 31, 1973, was admitted to probate. Although Gillaizeau challenged the will on a number of occasions thereafter, none of her challenges was successful. Furthermore, by making the challenges, she forfeited any legacy or interest she had under the terms of the will, including the forgiveness of the "loan." Thus, unless she can prove either that the "loan" was actually a gift or that Zanuck did make an *inter vivos* release during his lifetime, she will be required to honor an obligation that came due sometime between 1978 and 1982, when she sold the stock.

## DISCUSSION

### Inadmissibility of Parol Evidence

The first question is whether Gillaizeau's parol evidence is admissible to show that the concededly unambiguous 1969 loan agreement was, in fact, no agreement at all. If such evidence is not admissible, then the Court must rule as a matter of law that Gillaizeau did incur an obligation to repay Zanuck as soon as she sold the 2000 shares of stock. If, however, the parol evidence is admissible, then the Court will be presented with a genuine issue of material fact concerning the exact nature of the transaction, and both motions for summary judgment will have to be denied.

■ The general rule concerning parol evidence is that if two parties have reduced their agreement to writing, a court of law will "exclude evidence of any prior oral or written agreement or of any contemporaneous oral agreement when offered to contradict, vary, add to, or subtract from the terms of the writing." *Richardson on Evidence*, § 601 (J. Prince 10th ed. 1973) (citing *Thomas v. Scutt*, 127 N.Y. 133, 27 N.E. 961 (1891)). Typically, "justification for the rule is found in the need for imparting stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses and the infirmity of memory." *Fisch on New York Evidence* § 42 (2d ed. 1977).

■ There are some exceptions to this rule, however, and Gillaizeau argues that one of these exceptions is applicable in this case. Under that exception, parol evidence is admissible to show that a "writing, although purporting to be a contract, is, in fact, no contract at all." *Richardson on Evidence, supra*, § 606. "Thus, fraud, illegality, want of consideration, delivery upon an unperformed condition, and the like may be shown by parol, not to contradict or vary, but to destroy a written instrument. Such proof does not recognize the contract as ever existing as a valid agreement and is received from the necessity of the case to

show that that which appears to be, is not and never was a contract." *Thomas v. Scutt, supra,* 127 N.Y. at 137–38, 27 N.E. at 962.

In this case, the parol evidence that Gillaizeau seeks to introduce concerns a contemporaneous statement by Zanuck that the written document had to be signed for his tax purposes only and that it would not really obligate her to pay him anything. In other words, she seeks to show that there never was a loan agreement between the two of them and that she signed the August 28th document only to help him achieve whatever tax purpose he had in mind. The Bank responds that to apply the exception rather than the general rule would be to allow the exception to swallow the rule and to seriously contravene public policy.

■ While the Court may not join in the Bank's former fear, it does agree that public policy would be contravened by extending the exception to a case in which the admission of parol evidence would have the effect of encouraging avoidance of the federal gift tax. The closest case to this one is *Bersani v. General Accident Fire & Life Assurance Corp.,* 36 N.Y.2d 457, 369 N.Y.S.2d 108, 330 N.E.2d 68 (1975).[2] In *Bersani,* the New York Court of Appeals refused to allow parol evidence to show that the "insured" and "insurer," as identified in the policy in question, never intended to enter into a real insurance contract, but rather made up a sham written contract for the sole purpose of inducing a third party to give the "insured" a mortgage on certain property. The court explained its decision in the following terms:

[T]he weight of authority is to the effect that parol evidence is admissible, as between the parties to a written agreement and their privies, to show that a writing which purports to be a contract is not a contract but a sham to further a plan to induce a third party to enter into it or to take or refrain from taking some affirmative action. But when the outcome of the admission of parol evidence, to the

effect that the parties to the written contract of insurance did not intend it to be an agreement of any force or efficacy, would be contrary to law and public policy, such proof would be inadmissible and the written contract of insurance would be enforced according to its terms.

*Id.* at 460–61, 369 N.Y.S.2d at 112, 330 N.E.2d at 71 (citations omitted).

Similarly, in *Mount Vernon Trust Co. v. Bergoff,* 272 N.Y. 192, 5 N.E.2d 196 (1936), the Court of Appeals noted public policy reasons for refusing to allow the defendant to introduce parol evidence to show that a bank note she had signed was never intended to be enforced.

The defendant may not have intended to deceive any person, but when she executed and delivered to the plaintiff bank an instrument in the form of a note, she was chargeable with knowledge that for the accommodation of the bank, she was aiding the bank to conceal the actual transaction. Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.

*Id.* at 196, 5 N.E.2d at 197.

■ Gillaizeau appears to be in a situation similar to those in which the defendants in *Bersani* and *Mount Vernon Trust* found themselves. Whether or not she actually knew that Zanuck's "tax purpose" was to evade the federal gift tax, she would have to be chargeable with such knowledge. At the minimum, it would have been obvious to anyone in her situation that the purpose of signing the sham document was to fool some third party and that the third party would have to be either the federal or state taxing authority. To extend the exception to the parol evidence rule in this instance, therefore, would be to encourage taxpayers to avoid the gift tax by drawing up sham loan agreements that are initially sufficient to avoid the IRS but

**2.** The parties agree that New York law governs this issue.

subsequently insufficient to demonstrate debts owed to the estates of deceased "lenders". Obviously, judicial encouragement of such a practice would be unwise. While a hardship may be worked on Gillaizeau if her parol evidence is not admitted, it must not be forgotten that, according to her own testimony, she signed a document knowing that it was meant to embody not a true agreement, but rather an apparent agreement. It should come as no surprise, therefore, that the Court is unwilling to intercede on her behalf and effectively assist in the execution of a scheme to mislead the IRS.

Nor does the Court find persuasive the cases Gillaizeau cites in support of her argument for admitting the proffered parol evidence. None of those cases involve the deception of a public institution and the contravention of clear public policy; rather, at most, they involve the deception of a private third party who consequently suffered harm that is either negligible or uncertain. *See, e.g., Bernstein v. Kritzer,* 253 N.Y. 410, 171 N.E. 690 (1930) (parol evidence admitted to prove that sole intent of signatories to sham written guaranty was to keep unidentified third-party creditors from preventing transfer of corporate stock); *Arner v. Arner,* 89 A.D.2d 899, 453 N.Y.S.2d 716 (2d Dep't 1982) (parol evidence admitted to prove that sole intent of signatories to sham stock transfer agreement was to dissuade private third party from exercising option to buy the stock); *International Assets Corp. v. Axelrod,* 245 A.D. 300, 281 N.Y.S. 32 (1st Dep't 1935) (parol evidence admitted to show that signatories to written instrument intended it solely to induce private third party to give an accounting). None of these cases called for the consideration of public policy required in *Bersani, Mount Vernon Trust,* and the instant case. If such consideration had been in order, this Court has little doubt that the parol evidence in question would have been excluded.

*Absence of an Unambiguous Written Release*

As noted earlier, with the holding that Gillaizeau's parol evidence is not admissible necessarily comes the conclusion that she was loaned, not given, the stock. This is so because she has conceded that the August 28, 1969, document is unambiguous on its face, and its express language includes her agreement to repay Zanuck the "cost of the stock" upon its resale. Thus, the only question remaining is whether Zanuck ever made an *inter vivos* release of her indebtedness. Her contention is that his memoranda of October 8, 1970, and January 26, 1972, constitute such a release; the Bank's contention is that they do not.

■ On this question, as with the first, the Court finds itself in agreement with the Bank. To prove a release, an obligor must produce a writing containing an "explicit, unequivocal statement of present promise to release [the obligor] from liability." *Carpenter v. MacHold,* 86 A.D.2d 727, 447 N.Y.S.2d 46, 47 (3d Dep't 1982). The two notes upon which Gillaizeau relies do not reflect such an explicit and unequivocal present intent to release her from her obligation.

■ The first note, that of October 8, 1970, could not be more equivocal in its key second paragraph, which reads in pertinent part: "[The August 28, 1969, agreement], of course, is invalidated completely, and is superceded by my Last Will and Testament." While the first part of this sentence alone might be read as expressing a present intent to release, the second part throws the whole matter into doubt. Indeed, taken as a whole, the sentence appears to convey no more than Zanuck's promise that he has included, or will include, a clause releasing her from her obligation.

■ Nor does the January 26, 1972, note add anything to the first note. The 1972 note cancels two other obligations, which are of no importance here, and states that the initial memorandum of October 8, 1970, speaks for itself with respect to the August 1969 loan. The 1972 note then closes with the general statement: "In other words, you are not indebted to me for any of the

matters referred to in any of these letters." Once again, if one part of the note, here the last sentence, is taken out of context, it appears to express the requisite unequivocal present intent to release Gillaizeau from her obligation. If, however, this sentence is read in conjunction with the earlier sentence that is specifically addressed to that obligation, as well as with the earlier note, as the Court must do, then what Zanuck intended is no longer unambiguous. Did he mean that Gillaizeau was no longer indebted to him because the obligation was forgiven in his will, or did he intend the two memoranda to serve as the instruments of release? If the latter was his intention, why did he also feel the need to add the forgiveness provision to his will?

In the face of such uncertainty as to what Zanuck's intentions were, the Court must conclude that the memoranda are so ambiguous that they cannot be considered valid releases. Thus, as a matter of law, the Court finds that Gillaizeau is unable to prove that, during his lifetime, Zanuck released her from her obligation to pay him the cost of the stock. Accordingly, she must be ordered at this time to pay his estate the $50,987.60 that came due when she sold the 2000 shares of stock sometime between 1978 and 1982.

CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is granted and the defendant's cross-motion denied. The defendant is ordered to pay the plaintiff $50,987.60.

SO ORDERED.