**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor of the Estate of Darryl F. Zanuck, Deceased, Plaintiff-Appellee,**

v.

**Genevieve GILLAIZEAU, Defendant-Appellant.**

**No. 771, Docket 84–7832.**

United States Court of Appeals, Second Circuit.

Argued Feb. 26, 1985.

Decided July 1, 1985.

Oakes, Circuit Judge, filed concurring and dissenting opinion.

Robert A. Weiner, New York City (Kenneth G. Roberts, Berger, Steingut, Weiner, Fox & Stern, New York City, of counsel), for defendant-appellant.

Michael G. Shannon, New York City (Stephen J. King, Burns Summit Rovins & Feldesman, of counsel), for plaintiff-appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York, Goettel, J., granting plaintiff's motion for summary judgment. The district court's opinion is reported at 593 F.Supp. 239. Although we agree with the district court that letters from Darryl Zanuck, purportedly releasing defendant from her obligation to repay certain loans, are ambiguous, we disagree with the court's conclusion based on that finding of ambiguity. Therefore, we reverse and remand.

I

Plaintiff Bank of America National Trust and Savings Association (Bank), a California citizen, is executor of the estate of Darryl F. Zanuck, the late film producer and president of Twentieth Century-Fox Film Corporation (Fox). Zanuck, who had separated from his wife in 1957, lived with defendant Genevieve Gillaizeau in New York between 1965 and 1973. In 1973 he returned to California where his wife and at least one of his three children lived, remaining there until his death in 1979.

In June 1969, Zanuck purchased 1,000 shares of Fox stock in Gillaizeau's name at a cost of $30,591.30. In August, Zanuck bought another 1,000 shares in defendant's name for $20,396.30. Shortly after the second purchase, Zanuck wrote, and both parties signed, the following letter:

August 28, 1969

Dear Genevieve:

It is our mutual understanding and agreement on the two purchases of 20th Century-Fox stock which I made for your benefit, that when you sell the stock you will reimburse me for the cost of the stock (which I believe averages out at somewhere around $50,900.), but that the profit at the time of sale will be entirely yours.

I am merely drawing this up as a memorandum in case death should occur to either one of us—but, I trust we will live to be a hundred.

Love,
/s/ Darryl F. Zanuck
Darryl F. Zanuck

Agreed and Accepted:
by
/s/ Gillaizeau
Genevieve Gillaizeau

Over one year later, Zanuck sent defendant the following letter:

October 8, 1970

Dear Genevieve:

When the girls were preparing the material for my Last Will and Testament, they found in my files a letter dated August 28, 1969.

This letter, of course, is invalidated completely, and is superseded by my Last Will and Testament.

Love,
/s/ Darryl
Darryl F. Zanuck

Zanuck had executed a will two months prior to the October 8 letter. In that will, Zanuck bequeathed fifty percent of his tax exempt securities to Gillaizeau, but did not mention forgiveness of any loans. A subsequent will, executed in October 1970, provided that any outstanding debt owed by a

legatee at the time of Zanuck's death would be deducted from that individual's bequest or trust. No specific forgiveness provision was included.

In September 1971, Zanuck executed still another will, in which Gillaizeau's share had dropped to forty-five percent of the securities, apparently as a consequence of the birth of an additional Zanuck grandchild. In this will Zanuck also named Gillaizeau as a residuary legatee, directing that the residue of his estate, divided equally between his two daughters in the previous wills, now be divided four ways, with Gillaizeau to receive one quarter. Like the two 1970 wills, this document included no specific forgiveness provision. All three of these wills expressly excluded Zanuck's son from participation in the proceeds of Zanuck's estate.

In January 1972, Zanuck wrote Gillaizeau yet another letter:

January 26th, 1972

Dear Genevieve:

In going through my financial files I came across three letters which I am enclosing in this letter.

The first letter is dated October 8, 1970 and it speaks for itself.

. . . .

In other words, you are not indebted to me for any of the matters referred to in any of these letters.

Best always,

/s/ Darryl F. Zanuck [1]

The parties acknowledge that Zanuck received no consideration for either this or the October 8, 1970 letter.

The next day, Zanuck executed a codicil to his September 1971 will. The material provision of the codicil added to the will the following language:

(D) I hereby forgive all debts that may be owed to me at my death by each of the following who shall survive me, and by the estate of each of the following who shall not survive me:

. . . .

(5) My friend, GENEVIEVE GILLAIZEAU.

On January 28, 1972, Zanuck was admitted to a hospital for cancer surgery. In October 1973, some time after he had returned to California, Zanuck executed a new will including no bequests to Gillaizeau, of whom the only mention was in a forgiveness provision:

B. I HEREBY FORGIVE all debts that may be owed to me at my death by each of the following who shall survive me, and by the estate of each of the following who shall not survive me:

. . . .

6. GENEVIEVE GILLAIZEAU. Such forgiveness with respect to said GENEVIEVE GILLAIZEAU shall specifically include (but shall not be limited to) any debt owed to me by her pursuant to a certain letter agreement between us dated August 28, 1969, relating to the purchase of certain shares of Twentieth Century-Fox Film Corporation.

The securities formerly bequeathed to Gillaizeau were now divided among Zanuck's grandchildren and the residue was to be distributed equally among Zanuck's three children, including his son, named as a beneficiary for the first time. This will, like the others, included an *in terrorem* clause providing that any legatee or beneficiary who contested the will or its provisions would forfeit his or her interest in the estate.

Zanuck died in 1979. The 1973 will, along with a 1977 codicil making changes not material here, was admitted to probate early in 1980. The Bank was then appointed executor of the estate.

At some time between 1978 and 1982, Gillaizeau sold the 2,000 shares of Fox stock. She has not returned to the estate the $50,987.60 paid by Zanuck to purchase the stock.

---

**1.** The third and fourth paragraphs of this letter, referring to loans that enabled defendant to place a down payment on a New York apart- ment, are omitted. Those loans are not material to this opinion.

Gillaizeau filed suit in California state court seeking revocation of probate on the grounds that Zanuck lacked testamentary capacity and was subject to undue influence and duress. She also filed an action seeking imposition of a constructive trust on the estate. These proceedings have been dismissed on a variety of procedural grounds, although defendant claims that appeals are pending. Defendant stipulated that if the will and codicil were properly admitted to probate, the *in terrorem* clause would mandate her forfeiture of the benefits of the will's forgiveness provision.

Meanwhile, the Bank filed suit in the United States District Court for the Southern District of New York seeking to recover for the estate the funds purportedly loaned to defendant. Gillaizeau, before filing an answer to the Bank's complaint, moved to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and for summary judgment, Fed.R.Civ.P. 56(b). She contended that the stock purchases were gifts, or, in the alternative, that even if they were held to be loans, they were released by Zanuck's letters of October 8, 1970 and January 26, 1972. The Bank opposed defendant's motion and filed a cross-motion for summary judgment.

After hearing oral argument on the cross-motions, the district court, ruling from the bench, denied both motions: "From the standpoint of the cross motions for summary judgment at this time, it cannot be said that there are no facts not in contest. Indeed there are a lot of facts in contest." J.App. at 227.

Defendant subsequently filed her answer. Plaintiff then moved for reargument before the district court, as did defendant. The court granted reargument and directed that the parties concentrate on limiting the issues to be tried. J.App. at 232. The parties submitted a stipulation of facts, defining the questions that they believed were pertinent. This stipulation revealed that a factual dispute existed concerning the significance of the letters and Zanuck's intent as reflected therein.

Based on the stipulation, the district court held that the 1969 transactions were loans rather than gifts and that the subsequent letters did not operate to release Gillaizeau from her obligation. On the first point, the court held that parol evidence was not admissible to prove Gillaizeau's contention that Zanuck's intent in drafting the 1969 letter was to avoid payment of the gift tax. Indicating its reluctance to aid in evasion of the tax laws, the court refused to consider parol evidence in interpreting the 1969 letter. 593 F.Supp. at 243–44. Thus, the court concluded that the 1969 letter unambiguously evidenced a loan. *Id.* at 244.

Second, the court held that because the later letters did not reflect "an explicit and unequivocal present intent to release [Gillaizeau] from her obligation," *id.* at 244, defendant could not as a matter of law prove that Zanuck intended that the letters effect a release. *Id.* at 245. Therefore, the court granted plaintiff's summary judgment motion and ordered defendant to pay $50,987.60 plus interest. This appeal followed.

## II

Gillaizeau does not challenge the district court's conclusion that the stock transactions represented a loan rather than a gift. On appeal, she contends that Zanuck's letters were releases, unequivocally manifesting Zanuck's intent to free her from her obligation to repay him for the cost of the stock. In the alternative, she argues that even if the letters are ambiguous, the court's entry of summary judgment for plaintiff was erroneous. We disagree with her first contention but agree with her second. The presence of ambiguity at this stage in the proceedings does not necessarily require entry of summary judgment for plaintiffs. While defendant still bears the burden of proving that the letters represent an "explicit, unequivocal statement" of Zanuck's present intent to release her from her obligation, *Carpenter v. Machold*, 86 A.D.2d 727, 727, 447 N.Y.S.2d 46, 47 (3d Dep't 1982), the court's conclusion

that defendant could not sustain her burden as a matter of law was erroneous. As we demonstrate below, further proceedings are necessary for the consideration of additional evidence.

### A. Ambiguity of the Letters

 New York law requires that a release contain an "explicit, unequivocal statement of a present promise to release defendant from liability." *Id.* at 727, 447 N.Y.S.2d at 47. Any words may be used, as long as they manifest the releasor's intent to discharge. *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965) (applying New York law); *Pratt Plumbing & Heating, Inc. v. Mastropole,* 68 A.D.2d 973, 973, 414 N.Y.S.2d 783, 784–85 (3d Dep't 1979). The parties' intent will determine the scope of a release. *Gordon,* 358 F.2d at 263.

 Gillaizeau maintains that each of the letters contains the requisite unequivocal statement of intention to release her from her debt. She insists that the letter of October 8, 1970, in which Zanuck stated, "[the August 28, 1969] letter, of course, is invalidated completely, and is superseded by my Last Will and Testament," demonstrates by its use of the present tense that Zanuck intended as of October 8 to release her. She also argues that because the will extant at the time of the letter contained no forgiveness provision, the October 8 letter could not have been meant to signal Zanuck's intent to effect a testamentary release.

Defendant finds additional support for her argument in the letter of January 26, 1972. She points to the final sentence, which stated, "[i]n other words, you are not indebted to me for any of the matters referred to in any of these letters." She points again to Zanuck's use of a present tense verb, finding it a clear indication of Zanuck's intent to effect an *inter vivos* release. Insisting that the district court erred in finding ambiguities on the face of the letters, she argues that only one interpretation of Zanuck's language is possible

and that her motion to dismiss the complaint should therefore have been granted.

We disagree. The language of the letters does not permit a conclusion that they demonstrate as a matter of law that Zanuck intended to effect an *inter vivos* release. While Gillaizeau's interpretation is certainly plausible, it is by no means the only one dictated by the language. The district court aptly noted that Zanuck's reference to his will in the October 8 letter introduced an element of ambiguity into what might otherwise have been a valid *inter vivos* release. And the reference in the letter of January 26 to the October 8 letter, with the cryptic comment that the October 8 letter "speaks for itself," extends the confusion. We cannot find in these letters the "unequivocal statement of a present promise to release" required by New York law. *Carpenter,* 86 A.D.2d at 727, 447 N.Y.S.2d at 47. Therefore, we hold that the district court was correct in denying Gillaizeau's motion for summary judgment.

### B. Effect of Ambiguity

We part company with the district court on the question of the effect of its finding of ambiguity. The court held that because the statements in the letters were not unequivocal, no release could exist as a matter of law. Therefore, the court granted plaintiff's motion for summary judgment. We believe that the existence of ambiguity at this stage does not mandate the grant of summary judgment for plaintiff. Instead, we conclude that the court should have conducted factfinding on the question of Zanuck's intent.

It appears that New York's courts have not yet resolved the precise question of the effect of a finding of facial ambiguity in a document purporting to be a release. We look first to cases interpreting releases and find no support for the court's conclusion. In *Carlson v. Hillman Periodicals, Inc.,* 3 A.D.2d 987, 163 N.Y.S.2d 21 (1st Dep't 1957), the Appellate Division ordered the trial court to receive testimony to aid in the interpretation of an ambiguous "consent

and release." The court refused, without additional testimony, to strike a defense based on the document. Clearly the court was willing to permit the introduction of additional evidence stating that "[the document] is ambiguous and being so, testimony may be received in aid of its construction." *Id.* at 988, 163 N.Y.S.2d at 22. We observe in passing that plaintiff's attempt to discount the relevance of this case by characterizing the agreement as a confirmed rather than a purported release is hampered somewhat by the court's references to the agreement as an "alleged" or "so-called" release. *Id.* at 987, 163 N.Y.S.2d at 21–22. We believe this hesitant language offers as much support for Gillaizeau's position as it does for plaintiff's. *Cf. Powell v. Oman Construction Co.*, 25 A.D.2d 566, 567, 267 N.Y.S.2d 862, 865 (2d Dep't 1966) (where release language is "clear, unambiguous and unequivocal," there is no need for factfinding and the parties' intent must be determined from the face of the agreement).

In *Ehrlich v. Abrams Instrument Corp.*, 53 A.D.2d 825, 385 N.Y.S.2d 299 (1st Dep't 1976), the court granted a new trial and ordered the trial court to submit to the jury the question of the meaning of a release. The agreement in question was equivocal, appearing to provide for either an unconditional novation or a release on the occurrence of a condition precedent. *Id.* at 825–26, 385 N.Y.S.2d at 301. Therefore, the court held that construction of the agreement was a jury question.

And finally, we reversed the grant of summary judgment where the scope of a release and related assignments were in doubt. In *Gordon*, 358 F.2d at 264, we remanded for determination of the intent of the parties in effecting a release of interests in a song. Because the meaning of the documents was unclear, we held that summary judgment was precluded. *Id. Cf. Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1114–16 (2d Cir.1977) (remanded for determination of whether release, binding as to one defendant, was intended to release other defendants as well); *Dury v. Dunadee*,

52 A.D.2d 206, 209–10, 383 N.Y.S.2d 748, 750–51 (4th Dep't 1976) (ambiguity in release of personal injury claim placed intent in issue; summary judgment inappropriate).

█ Thus it is clear that, at least where confirmed releases are concerned, the existence of facial ambiguities does not mandate the grant of summary judgment for the party against whom the release is to be used. Rather, additional evidence may be considered in construing the release. Now we must consider whether an ambiguity that prevents a firm conclusion that an agreement is a release requires a different result. We hold that it does not.

We note first that two of our sister circuits, interpreting the law of different jurisdictions, have reached what we believe to be the correct conclusion. In *Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578 (5th Cir.1974), the Fifth Circuit refused to state as a matter of law that a document was in fact "a release of all outstanding and future claims." *Id.* at 584. Instead, the court held that the interpretation of the alleged release was properly a jury question.

In *Eulo v. DeVal Aerodynamics, Inc.*, 430 F.2d 325 (3d Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), the Third Circuit reached a similar conclusion. A letter agreement was described by the defendant as a present release and by the plaintiff as a conditional promise to release. Noting that the letter could be construed either way, the court ruled that the district court erred in considering the interpretation of the release to be a question of law. *Id.* at 328–29. Because the district court had not permitted the introduction of sufficient evidence on the question, the record was not adequate to permit appellate resolution of the factual dispute. *Id.*

We find ourselves in a situation similar to that of the Third Circuit in *Eulo*. The record before us is not adequate to permit consideration of the question of Zanuck's intent in drafting the letters of October 8,

1970 and January 26, 1972. The district court's grant of summary judgment inappropriately prevented the resolution of that fact question.

■ Our conclusion is in accord not only with the views of other circuits, but also with contract principles. The interpretation of releases is governed by principles of contract law. *Gordon,* 358 F.2d at 263; *Dury,* 52 A.D.2d at 208, 383 N.Y.S.2d at 750; Restatement (Second) of Contracts § 284 comment c (1981) ("The rules of interpretation that apply to contracts generally apply also to writings that purport to be releases.").

■ Where contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact. Summary judgment is therefore inappropriate. *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983). Here, as discussed above, there are at least two reasonable interpretations of the letters. Determination of the actual meaning of those letters, therefore, presents a factual question. Extrinsic evidence or oral testimony may be introduced to facilitate the resolution of that question. *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). The fact that both parties moved for summary judgment should not influence our conclusion that disputed factual issues exist. *Id.; Ehrlich,* 53 A.D.2d at 826, 385 N.Y.S.2d at 301.

Plaintiff did not sustain its burden of demonstrating the absence of any genuinely disputed issue of material fact. *Heyman,* 524 F.2d at 1320. Therefore, the district court's grant of summary judgment for plaintiff was improper.

### III

The judgment of the district court is vacated. We remand for further proceedings as to Zanuck's intent in drafting the letters of October 8 and January 26.[2]

2. We note that the court's unwillingness, in considering whether the transaction was a gift or a loan, to give effect to Zanuck's purported intent to frustrate the tax laws should not require the

OAKES, Circuit Judge (concurring and dissenting):

While I too would vote to reverse, I would do so with instructions to grant Gillaizeau's motion for summary judgment. I think the last paragraph of the letter of January 26, 1972, written just before Zanuck was to be operated on for cancer unequivocally releases her from any liability. It does so after first referring to the October 8, 1970, letter which "speaks for itself" (in that arguably it also releases her from liability for the Twentieth Century-Fox stock). It does so by saying, "in other words, you are not indebted to me for *any of the matters* referred to in *any* of these letters" (emphasis added). How more unequivocal could a layman be? I would say that his codicil executed the next day doing the same by will was out of an abundance of caution, making sure that his estranged wife or executor would not go after Ms. Gillaizeau.

same conclusion here, where the issue is simply whether Zanuck intended to release defendant from her obligation to repay his loans.