**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff–Appellant,**

**v.**

**UGI UTILITIES, INC. Defendant–Appellee.**

**Docket No. 04–2409–CV.**

United States Court of Appeals, Second Circuit.

Sept. 9, 2005.

**750**

Woody N. Peterson, Dickstein Shapiro Morin & Oshinsky LLP, New York, N.Y., for Plaintiff–Appellant.

Jay N. Varon, (James M. Caragher, Gary D. Rovner, Max Welsh, Peter N. Wang, on the brief), Foley & Lardner LLP, Washington, D.C. and New York, N.Y., for Defendant–Appellee.

PRESENT: KATZMANN, HALL; Circuit Judges, and MURTHA,[1] District Judge.

### SUMMARY ORDER

Plaintiff–Appellant Consolidated Edison Company of New York, Inc., ("Con Ed") appeals from a grant of summary judgment to Defendant–Appellee UGI Utilities ("UGI") entered on April 1, 2004 in the United States District Court for the Southern District of New York (Chin, *J.*). Having found in an accompanying opinion that Con Ed's claims arise under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), and thus subject matter jurisdiction exists in this matter, we now address the merits. We assume familiarity with the procedural posture of this case and with its facts, which are set forth in detail in the decision of the district court, *Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc.*, 310 F.Supp.2d 592, 596–602 (S.D.N.Y.2004), and in the opinion accompanying this summary order, *Consol. Edison Co. of New York, Inc. v. UGI Utils., Inc.*, No. 04–2409, 2005 WL 2176072 (2d Cir. filed Sept. 9, 2005).

After volunteering to clean up certain of its sites in Westchester County that had been polluted by the operation of manufactured gas plants ("MGPs"), Con Ed brought suit against UGI in 2001 seeking to recover a portion of the cleanup costs.

Con Ed attempts to hold UGI liable, through its corporate predecessors, for the environmental harm at ten MGPs occurring from 1887 to 1904. There are four components of Con Ed's theory of liability. First, Con Ed alleges that between 1887 and 1900 UGI operated three sites in Yonkers—on Woodworth Avenue, Ludlow Street, and Nepperhan Avenue—under three separate leases and was responsible under CERCLA for the environmental harm done there during that period (the "Yonkers Claim"). Second, Con Ed asserts that between approximately 1898 and 1902 UGI was a CERCLA operator of an MGP in Tarrytown and one in White Plains that were owned through UGI subsidiaries (the "White Plains and Tarrytown Claim"). Third, Con Ed asserts that between 1890 and 1900, Con Ed (through its corporate predecessor American Gas) was a CERCLA operator of MGPs in Rye, Mount Vernon, Pelham, Port Chester, and New Rochelle (the "American Gas Claim"). In 1900 or soon thereafter, all of these MGPs were purchased by or merged with the Westchester Lighting Company ("WLC"), a UGI holding company, and this is the basis for the fourth component of Con Ed's liability claim (the "WLC

---

**1.** Hon. J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

Claim"). Here Con Ed asserts that UGI is liable for the environmental harm at the White Plains and Tarrytown MGPs and the five American Gas MGPs from roughly 1900, when most of them were consolidated under WLC's control, to 1904, when WLC was sold to Con Ed.[2]

UGI moved for summary judgment on all claims, and the district court granted the motion. *Consol. Edison Co. of New York, Inc.*, 310 F.Supp.2d at 602–10. On the Yonkers Claim, the district court concluded that any liability UGI might have had was covered by a general release WLC issued to UGI when WLC purchased the three MGPs and cancelled UGI's operating leases in 1900. *See id.* at 602. The district court also granted summary judgment on the remaining claims—the White Plains and Tarrytown Claim, the American Gas Claim, and the WLC Claim. It concluded that Con Ed had not produced enough evidence to allow a reasonable jury to find that, under the standard for CERCLA operator liability laid out in *United States v. Bestfoods*, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), UGI was an operator of these MGPs. *Id.* at 602–10.

■ We review a grant of summary judgment *de novo*. *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 639 (2d Cir.2005). Under section 107(a) of CERCLA, liability attaches to "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). Of the two bases for CERCLA liability—owning or operating a facility—it is the second

that concerns us here. To be liable as an operator of a facility, the Supreme Court has instructed, a person "must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *United States v. Bestfoods*, 524 U.S. 51, 66–67, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998); *see also Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 332 n. 3 (2d Cir.2000).

In considering whether a parent was an "operator" of a subsidiary's facility, "norms of corporate behavior (undisturbed by any CERCLA provision) are crucial reference points." *Bestfoods*, 524 U.S. at 71, 118 S.Ct. 1876. When such activities are "consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures," *id.* at 72, 118 S.Ct. 1876 (quotations and citations omitted), CERCLA operator liability does not arise. The Court also emphasized that, "[s]ince courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary, it cannot be enough to establish liability ... that dual officers and directors made policy decisions and supervised activities" at the subsidiary's facility. *Id.* at 69–70, 118 S.Ct. 1876 (citations omitted).

We conclude, as did the district court, that UGI was entitled to summary judgment on Con Ed's White Plains and Tarrytown Claim, its American Gas Claim, and its WLC Claim, all of which alleged

---

**2.** It is not clear from the proceedings below or arguments on appeal whether Con Ed asserts that from 1900 to 1904 WLC was a CERCLA operator—in addition to the other seven WLC MGPs—of the three Yonkers MGPs, which WLC acquired in 1900 through purchase of three holding companies. To the extent Con Ed does assert such a claim, we conclude that claim must fall to UGI's summary judgment motion for the same reasons we find that summary judgment was proper on the WLC Claim.

CERCLA operator liability. Largely for the reasons identified by the district court, *Consol. Edison Co. of New York, Inc.*, 310 F.Supp.2d at 606–10, we conclude that Con Ed has pointed to no evidence that would allow a reasonable jury to conclude that UGI "manage[d], direct[ed], or conduct[ed] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 66–67, 118 S.Ct. 1876. Its evidence, in general, consists of (1) overlapping officers and directors between parent and subsidiary, (2) close parental control of the subsidiaries' expenditures, and (3) UGI's enthusiasm for its subsidiaries to use its patented gas machinery. No evidence, however, rebuts the presumption that dual officers and directors can faithfully serve both parent and subsidiary. No evidence is inconsistent with UGI's (or American Gas's) role as an investor in its subsidiaries. In other words, no evidence would allow a reasonable jury to find that the conduct of UGI or American Gas meets the *Bestfoods* standard on these three claims.

■ On the Yonkers Claim, we disagree with the district court. The three identical releases at issue were each part of cancellations of the lease agreements under which UGI operated the MGPs. Each release stated that the lease agreement was cancelled and that "all claims and demands thereunder ... by [Con Ed's predecessor] against [UGI] under said agreement are hereby forever released." In an oral decision, the district court concluded that "it is a general release," but "the language is broad enough to pick up the pollution claim."

We look to state law when interpreting agreements shifting CERCLA liability. *See Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993) (interpreting CERCLA indemnification agreement). "New York law requires that a release contain an 'explicit, unequivocal statement of a present promise to release defendant from liability.'" *Bank of Am. Nat'l. Trust & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 713 (2d Cir.1985) (citing *Carpenter v. Machold*, 86 A.D.2d 727, 447 N.Y.S.2d 46, 47 (3d Dep't 1982)). Here, the language of the release is only unequivocal and explicit in releasing claims arising under the lease agreements. Con Ed's claims, however, arise under CERCLA. We cannot conclude that the release was an explicit, unequivocal statement releasing *all* liability, or *contingent* liability, or *environmental* liability. *See John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 406 (1st Cir.1993) (holding that, based on Massachusetts law, "[t]o transfer CERCLA liability, the Agreement must contain language broad enough to allow us to say that the parties intended to transfer either contingent, environmental liability, or all liability"). Thus, summary judgment was improper.

Accordingly, the judgment of the district court granting summary judgment to UGI is hereby AFFIRMED as it relates to the White Plains and Tarrytown Claim, the American Gas Claim, and the White Plains Claim and REVERSED as it relates to the Yonkers Claim and REMANDED for further proceedings