**UNITED STATES of America, Plaintiff,**

**v.**

**TOSHOKU AMERICA, INC., and Federal Insurance Co., Defendants,**

**TOSHOKU AMERICA, INC., Third-Party Plaintiff,**

**v.**

**CATZ INTERNATIONAL, INC., Third-Party Defendant and Fourth-Party Plaintiff,**

**v.**

**SOUTHERN COMMODITIES, INC., Fourth-Party Defendant.**

Court No. 84–11–01590.

United States Court of International Trade.

Sept. 14, 1987.

2. Results of Second Remand Proceeding, p. 6.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Kenneth N. Wolf, New York City, for plaintiff.

Fitch, King & Caffentzis, Peter J. Fitch, New York City, for defendants, Toshoku America, Inc. and Federal Ins. Co.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge:

The Government commenced this action in accordance with 28 U.S.C. § 1582(2) to recover unpaid liquidated damages assessed under defendants' entry bond for failure to export diseased tuna. Defendants claim that Customs failed to comport with the regulatory scheme and thus, the government is prevented from asserting this claim. The matter is before the Court on the parties' cross-motions for summary judgment.[1] Alternatively, defendants argue that summary judgment in plaintiff's

favor cannot be granted as factual issues relate to plaintiff's claim.

## BACKGROUND

On May 23, 1978, the importer, Toshoku, as principal, and Federal Insurance Co. (Federal) as surety, executed and delivered to Customs a GENERAL TERM BOND FOR ENTRY OF MERCHANDISE. The bond provided for the conditional release of the merchandise before its right of admission was determined by imposing certain obligations on the principal. In the case of merchandise found not to comply with the laws governing its admission, Toshoku guaranteed: (1) to redeliver to Customs upon demand any such merchandise (¶ 4 of the bond); and (2) after proper notice, *inter alia*, to export the merchandise, and perform any other act lawfully required (¶ 7 of the bond). In the event of default of any of these conditions, defendants guaranteed to be liable, jointly and severally, for liquidated damages equal to the value of the entered merchandise ($30,636.00) plus the amount of estimated duties ($1,838.16).

On October 10, 1978, Toshoku imported 1300 cartons of tuna which were covered by the aforementioned entry bond. Pursuant to § 801(a) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 381(a); the FDCA), the FDA sampled the merchandise. Since this examination revealed that the tuna appeared to be decomposed, a Notice of Detention and Hearing was issued by the FDA on October 31, 1978, informing Toshoku of the same. On December 12, 1978, a Notice of Refusal of Admission was sent stating that the tuna was in violation of § 801(a)(3) of the FDCA, as it appeared to be decomposed. That notice, which was signed for the District Director of Customs, directed Toshoku to export the merchandise under Customs supervision, within 90 days of the notice, or risk destruction of the goods. The entries covering these goods were liquidated on December 29, 1978.

---

1. The third party and fourth party derivative claims are not presently before the Court for disposition.

**1008**

Since Toshoku failed to export or destroy the goods, three months later, on March 16, 1979, Customs informed Toshoku that it was proceeding with a liquidated damage claim and on May 7, 1979, issued a notice of liquidated damages incurred and demand for payment. Customs based this claim on Toshoku's failure to redeliver the prohibited merchandise to Customs custody in violation of ¶ 4 of the bond. However, Customs had failed to timely issue a demand to redeliver, a condition precedent to enforcing this provision. Therefore, this claim was cancelled on March 19, 1981. Concurrent with the cancellation of that claim, Customs asserted a new claim for liquidated damages based on Toshoku's failure to export the goods in violation of ¶ 7 of the bond, accompanied by another demand for payment, dated March 9, 1981, which was also forwarded to the surety, Federal. Toshoku unsuccessfully petitioned for relief from this second claim and on August 9, 1984 a further demand for payment was made against the surety. To this date neither defendant has paid the liquidated damages and there has been no proof submitted that the merchandise was ever exported or destroyed.

The government claims that Toshoku failed to export the prohibited merchandise as directed, which constitutes a breach of ¶ 7 of the bond, thus obligating the defendants to pay liquidated damages. Defendants concede that the merchandise was never exported or destroyed but by way of affirmative defenses, maintain that they are not in breach of the bond. Defendants contend that if goods have been released by Customs, and are later found to be inadmissible, Customs must reacquire control or custody over the goods, by demanding redelivery; absent this demand, Customs cannot enforce a claim for failure to export. Defendants allege that there is no bond obligation under ¶ 7 to export prohibited merchandise, unless the importer seeks to bring the goods into compliance by exporting the nonconforming part of the shipment; and furthermore, proper notice as contemplated by ¶ 7 of the bond was not provided.

## DISCUSSION

In accordance with 21 U.S.C. § 381(a), the Secretary of Health and Human Services (FDA) shall sample all food offered for importation and if it appears from such examination that the food is adulterated, it shall be refused admission. The Secretary of the Treasury (Customs) shall cause the destruction of any such merchandise unless exported under Customs regulations within 90 days of the date of the notice of refusal or within such additional time that may be permitted. Under § 381(b), pending the decision on admissibility by the FDA, the merchandise may be delivered to the importer, if he has executed a bond providing for the payment of liquidated damages in the event of default. This subsection further allows for the reconditioning of merchandise to rectify any non-compliance.

It is clear that any adulterated food refused admission must be exported or destroyed, S.Rep. No. 890, 81st Cong., 1st Sess. (1949) *reprinted in,* 1949 U.S.Code Cong. Service, 2147; although, it is the importer who exercises the option to export rather than have the goods destroyed. *Carl Borchsenius Co. v. Gardner,* 282 F.Supp. 396, 402 (E.D.La.1968). Nevertheless, when the defendants executed the bond in question, they entered into a contract with the government thereby agreeing to perform the conditions enumerated therein. *See United States v. Atkinson,* 6 CIT 257, 260, 575 F.Supp. 791, 794 (1983). One of these conditions was to export (or destroy) merchandise found not to comply with the laws governing its admission. The question is whether this obligation may not be enforced against defendants because Customs conditionally released the goods, and whether the only method Customs has to enforce the FDA decision is to first demand redelivery and then require exportation.

Defendants stress that both the FDA and Customs regulations require redelivery of prohibited goods. 19 C.F.R. §§ 12.1–12.5 specifically apply to the importation of food, drugs, and cosmetics, which is governed by 21 U.S.C. § 381. 19 C.F.R. § 12.4 provides that any such merchandise re-

fused admission shall be exported under Customs supervision in accordance with 19 C.F.R. §§ 18.25 and 18.26. However, neither regulation makes any mention of redelivery to Customs custody. Section 18.25 [2] provides:

> (a) ... when no entry has been made or completed for merchandise *in Customs custody,* or when the merchandise is covered by an unliquidated consumption entry, *or* when merchandise which has been entered in good faith *is found to be prohibited* under any law of the United States, and such merchandise is to be exported ... [emphasis added].

The remainder of § 18.25(a) outlines the actions necessary for direct exportation of the merchandise. The above quoted language does not support defendants' conclusion that this provision presumes that the merchandise has already been returned to Customs custody before those procedures are undertaken. The term *in Customs custody* is not used to modify the last clause in that sentence and demonstrates that exportation shall be effected under this regulation when the merchandise is prohibited, or when it is in Customs custody. Further, under § 18.25(e) the principal on any bond who guaranteed exportation *shall cause the merchandise to be exported,* and as required under § 113.55 (which authorizes the cancellation of the bond upon proof of exportation such as: listing the merchandise on the outward manifest or bill of lading), shall provide such evidence of exportation to Customs.

Defendants emphasize that under 19 C.F.R. § 141.113 the District Director shall demand the return of merchandise refused admission to Customs custody, before liquidation of the entry has become final.[3] It is argued that if the importer could just be ordered to export or destroy, what is the purpose of including the requirement of redelivery. While redelivery is not explicit-

ly defined in the regulations, Congress has stated that:

> ... a demand for redelivery (or a "constructive seizure"[) ] to Customs custody is in reality no different than a decision to exclude merchandise from entry or delivery—a decision which the Customs Court may now review. The only difference ... is the time when the decision is made by the Customs Service. The decision to exclude is made at the time an entry is attempted. A demand for redelivery is made after the goods have already entered but the Customs Service subsequently decides that the goods should not have been allowed into the commerce of the United States in the first instance.

S.Rep. No. 466, 96th Cong., 1st Sess. 7 (1979).

 Therefore, the demand for redelivery in its primary focus, is necessarily used when *Customs* subsequently determines that goods should be excluded. As this Court iterated in *United States v. Utex Int'l Inc. and Sentry Ins. Co.,* 11 CIT —, —, 659 F.Supp. 250, 253 (1987), *appeal docketed* No. 87–1414 (Fed.Cir. June 17, 1987), there are certain decisions to exclude merchandise, not related to the importation of food, which are inherently within the jurisdiction of Customs. However, the decision to exclude contaminated food is solely within the discretion of the FDA. *Sugarman v. Forbragd,* 405 F.2d 1189 (9th Cir.1968), *cert. denied,* 395 U.S. 960, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969). Customs does not decide the admissibility issue but merely enforces the FDA decision. *Utex,* 11 CIT at —, 659 F.Supp. at 252. Therefore, when as here, the FDA determines the goods should be excluded, the demand for redelivery is not necessarily the *sine qua non* to direct exportation. However, if the importer fails to export the merchandise which was denied admission, it is recognized that a demand for redelivery is

---

**2.** Section 18.26 provides for indirect exportation, i.e., transport to another port before exportation.

**3.** 21 C.F.R. § 1.97 states that a bond required by 21 U.S.C. § 381 shall contain a provision for redelivery upon demand and a provision for the performance of those conditions which may lawfully be imposed to bring the article into compliance.

used as an enforcement mechanism to prevent these goods from entering the commerce of the United States.[4]

Notwithstanding that these regulations contemplate that the importer shall export the prohibited goods without a demand for redelivery, defendants deny any obligation to export referring to the purposes of each bond condition in issue. The basic import and entry bond conditions enumerated in 19 C.F.R. § 113.62 shall be incorporated in any bond covering the release of food (*see* 19 C.F.R. § 12.3). In relevant part these conditions are:

(d) ... If merchandise is released conditionally from Customs custody to the principal before all required evidence is produced, before its quantity and value are determined, or before its right of admission into the United States is determined, the principal agrees to redeliver timely, on demand by Customs, the merchandise released if it:

(1) Fails to comply with the laws or regulations governing its admission into the United States;

\* \* \* \* \* \*

[Any demand for redelivery will be made within 30 days after the release of the merchandise or 30 days after the conditional release period, whichever is later.]

(e) *Agreement to Rectify Any Non-Compliance with Provisions of Admission.* If merchandise is released conditionally to the principal before its right of admission into the United States is determined, the principal, after notification, agrees to mark, clean, fumigate, destroy, export or do any other thing to the merchandise in order to comply with the law and regulations governing its admission into the United States within the time period set in the notification.

Apparently ¶ 4 of the bond refers to § 113.62(d) and ¶ 7 incorporates

§ 113.62(e). It is claimed that ¶ 7 does not apply in this situation where the entire shipment was refused admission and no permission was sought under 21 U.S.C. § 381(b) to rectify the noncompliance (by exporting the goods). Defendants claim that when goods are refused admission under § 381(a), the only consequence for electing not to export, is destruction of the goods. There is nothing to suggest however, that § 113.62(e) only covers situations in 21 U.S.C. § 381(b), or that it excludes a situation where the entire entry is denied admission. The FDA instructed Toshoku to export the goods within 90 days, in order to comply with the laws governing its admission, as per 21 U.S.C. § 381(a), and the Court finds this within the parameters of § 113.62(e).

Defendants have not cited any case law in support of their position, while reference to those cases which have addressed the issue of bond liability, would tend to defeat their argument. *See, e.g., United States v. India Food and Gourmet, et al.,* 9 CIT 171, 176 (1985) (similarly, no notice to redeliver issued but court held that "Customs' effort to collect damages for failure to export (or destroy) after first seeking damages for failure to redeliver was a valid action under the bond"); *United States v. Imperial Food Imports, et al.,* 11 CIT —, —, 660 F.Supp. 958, 960 (1987) (defendant was obligated to pay liquidated damages where the refused goods were not exported, destroyed, *or* redelivered), *appeal docketed* No. 87–1330 (Fed.Cir. May 7, 1987); *United States v. B.B.S. Electronics Int'l Inc., et al.,* 9 CIT 561, 567, 622 F.Supp. 1089, 1095 (1985) (although importer instructed to deliver goods to Customs after refused admission, court held "it is undisputed that pursuant to paragraph 7 of the bond, BBS agreed to export the [merchandise] under Customs supervision").

---

**4.** In recognizing the serious threat that merchandise denied admission by the FDA may still enter the commerce of the United States, by virtue of the New York Region Informational Pipeline No. 928 (May 14, 1984), a *policy* was established of demanding physical redelivery of the goods, where all subsequent options by the importer (to export or destroy) would occur thereafter under Customs supervision. Contrary to defendants' interpretation, the Court views this to mean that previously no initial demand for redelivery was required.

It is noted that the time limits for demanding redelivery under § 141.113, *supra,* are different from those imposed pursuant to § 113.62 *infra,* under the bond.

While defendants urge that liquidation of the entries herein constitutes a bar to Customs action against the bond, the Court is not persuaded that its recent decision to the contrary in *Utex, supra,* is erroneous. As stated in *Utex,* the importer's liability imposed by liquidation for import duties is in addition to the obligation to export the prohibited merchandise. 11 CIT at ——, 659 F.Supp. at 253. Under 19 C.F.R. § 159.55(a) suspension of liquidation is required for entries covering merchandise subject to § 12.1 (imported food) until the decision is made as to its admissibility. Even though the goods were refused, liquidation of these entries was still valid under this regulation since it occurred after the admissibility decision was made. *See United States v. A.N. Deringer, Inc.,* 66 CCPA 50, 54, C.A.D. 1220, 593 F.2d 1015, 1019 (1979). Furthermore, under § 159.55(b) if the merchandise is exported under Customs supervision in accordance with § 158.45(b) or destroyed in accordance with § 158.41, any duties paid shall be refunded. Moreover, §§ 158.41 and 158.45(b) and (c) address merchandise which is either denied admission by any government agency or has been found to be prohibited under any law *after its release from Customs custody* and permit its destruction or exportation (in accordance with §§ 18.25–18.27) under Customs supervision. The regulations clearly contemplate that neither release from Customs custody nor liquidation poses a bar to recovery.

Defendants further contend that the notice of refusal of admission cannot serve both to deny admission and as a notice to export under ¶ 7 of the bond, alleging that only Customs can order exportation and only the FDA can determine admissibility. The refusal of admission was signed by one Wanda Eng and under her signature reads "for DISTRICT DIRECTOR OF CUSTOMS". Other FDA forms submitted with the parties' motions contain her signature and her title as Compliance Officer, apparently from the FDA. Defendants submit that a factual question exists as to her authority.

There is nothing in § 381(a) or in the Customs or FDA regulations that explicitly state which agency is actually to order exportation of the prohibited merchandise and nothing in the law or regulations prohibit this notice from being issued by the FDA. The Court does not consider it of consequence that this notice was signed for the District Director of Customs considering that under 21 U.S.C. § 371 and 19 C.F.R. § 12.1, there is cooperation between the two agencies when supervising the importation of food.

The notice merely reiterated the language of 21 U.S.C. § 381. Since there is no specific law or regulation which mandates that the notice to export must be duly generated from Customs or the FDA, the question then is whether this notice was reasonable. Clearly, the importer received actual notice that the entry was refused and what must be done to these goods which have been found not to comply with the laws governing its admission.[5] Defendants never challenged the FDA findings or the notice of refusal of admission as not lawfully authorized. Although defendants question what constitutes the actual notice alleging that the notice submitted with plaintiff's motion is really a collage of documents, this contention is without merit as: (1) defendants have not claimed that the importer did not receive this notice; (2) this form was certified to be a true and accurate copy of the document; and (3) as plaintiff states, the original was supplied to the importer. The Court considers this notice, afforded defendants, to be proper, and in light of the above discussion does not raise a triable issue which would preclude summary judgment in plaintiff's favor.

The government seeks both pre-judgment and post-judgment interest. Plaintiff shall be awarded post-judgment interest in accordance with 28 U.S.C.

---

5. It is noted that documentation submitted with Toshoku's third party claim states that any party who purchased the diseased goods must re-export them and provide proof of such exportation. This point is raised to dispel any notion that defendants were not aware that the notice of refusal of admission also properly directed exportation.

§ 1961. *Imperial Food Imports*, 11 CIT at —, 660 F.Supp. at 961; *B.B.S. Electronics*, 9 CIT at 567, 622 F.Supp. at 1095. As stated in *Utex*, the rate in subsection (c) of § 1961 is not applicable to this type of action. 11 CIT at —, 659 F.Supp. at 254. The Court also rejects defendants' request to delay imposition of this award for ten days after entry of the final judgment, as there is no justification for such action.

The decision as to whether pre-judgment interest is warranted is within the court's discretion as no statute specifically provides for this award. *Atkinson*, 6 CIT at 262, 575 F.Supp. at 795; *accord B.B.S. Electronics*, and *Imperial Food Imports*, *supra*. "In determining the propriety of such an award, any laxity on the part of plaintiff in pursuing its claim is to be considered." *Utex, supra*. In *Imperial Food Imports*, pre-judgment interest was awarded from the date of the final demand for payment, and in *Utex*, this Court granted pre-judgment interest from the date when defendant's petition for mitigation of the claim was denied.

The goods were refused admission in December 1978. The first demand for payment based on the claim presently before the Court, was made on March 19, 1981. This followed with a lengthy administrative review of Toshoku's petition for relief (*see* 19 C.F.R. § 172.1 *et seq.*, and 21 C.F.R. § 1.98), which culminated in denying mitigation of the claim. On August 9, 1984, an additional demand for payment was made on Federal, the surety. The facts and circumstances as presented in this case warrant pre-judgment interest from the date of this demand. Notwithstanding the Court's recent position in *Utex*, this appears to be the first time a formal demand was made on the surety. Clearly, the government was entitled to payment at this time. The rate of pre-judgment interest shall be in accordance with 26 U.S.C. § 6621. Finally, the amount sought ($32,474.16), is the sum of the value of the merchandise plus the estimated duty thereon, as provided by the bond. However, the entry has been liquidated and the duty has been tendered. Therefore, the amount recoverable shall be limited to the value of the merchandise, $30,636.00.

## CONCLUSION

Defendants are liable to the government for liquidated damages pursuant to their entry bond for failure to export contaminated food. This claim is not precluded by Customs failure to issue a demand for re-delivery. The notice of refusal of admission is not improper merely because it was issued by the FDA for Customs, it apprised the importer of its responsibility to export. Plaintiff has established that it is entitled to summary judgment. However, the amount recoverable shall be limited to the value of the merchandise, $30,636.00, as the goods have already been liquidated. Defendants shall pay post-judgment from the date of the judgment and pre-judgment interest from August 9, 1984. So ordered.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED: that plaintiff's motion for summary judgment is granted; and it is further

ORDERED, ADJUDGED AND DECREED: that defendants' motion for summary judgment is denied; and it is further

ORDERED, ADJUDGED AND DECREED: that judgment be, and hereby is, entered in favor of plaintiff against defendants in the amount of $30,636.00 plus post-judgment interest in accordance with 28 U.S.C. § 1961 from the date of this judgment, and pre-judgment interest from August 9, 1984, to be calculated in accordance with 26 U.S.C. § 6621.