UNITED STATES, Plaintiff,

v.

CONTINENTAL SEAFOODS, INC. and National Bonding and Accident Insurance Company, Defendants and Third–Party Plaintiffs,

v.

SAW MILL INTERNATIONAL CORPORATION, Third–Party Defendant.

Court No. 86–07–00834.

United States Court of International Trade.

Oct. 27, 1987.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice (Susan Handler–Menahem), New York City, for plaintiff.

Barnes, Richardson & Colburn (Robert E. Burke and Thomas M. Keating), Chicago, Ill., for defendants and third-party plaintiffs.

Donovan, Maloof, Walsh & Repetto (Thomas P. Parry), New York City, for third-party defendant.

## OPINION

TSOUCALAS, Judge:

This action, commenced by plaintiff, the United States, pursuant to 28 U.S.C. § 1582(2) (1982), is presently before the Court on cross-motions for summary judgment. Plaintiff seeks to recover liquidated damages for alleged violations of an entry bond from Continental Seafoods, Inc. ("Continental") and National Bonding & Accident Insurance Co. ("National"), defendants and third-party plaintiffs. Defendants deny liability to plaintiff but seek indemnification from the third-party defendant, Saw Mill International Co. ("Saw Mill"), in the event that judgment is rendered in favor of plaintiff.

### Background

Continental, as principal, and National, as surety, had executed a General Term Bond securing the entry of shrimp from India, which was made on July 9, 1979. By virtue of executing that bond, the principal and surety jointly and severally obligated themselves to pay plaintiff an amount equal to the entered value of the merchandise plus estimated duties if in default of the conditions recited in the bond. The provisions of the bond obligated the principal, *inter alia*, to "mark, label, clean, fumigate, destroy, export, and do any and all other things that lawfully may be required in the case of any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States." *Plaintiff's Motion for Summary Judgment*, Solinger Affidavit, Bond ¶ 7 (hereinafter "Plaintiff's Motion" at ——).

Pursuant to the authority granted in the Federal Food, Drug, and Cosmetic Act, § 801(a), codified as amended at 21 U.S.C. § 381(a) (1982), the Food and Drug Administration of the Department of Health & Human Services ("FDA"), notified Continental, on July 13, 1979, that it would sample the shrimp. On August 8, 1979, the FDA issued a notice of detention and hearing to Continental stating that the shrimp appeared to contain salmonella bacteria and that the goods must be held intact pending final decision as to their admission.

On September 7, 1979, the FDA, in response to Continental's requests, granted fifteen days during which reconditioning of the merchandise could be attempted. Continental failed to successfully recondition the shrimp, and on May 6, 1980, the FDA issued a notice of refusal of admission advising Continental that the shrimp must be exported under the supervision of the Customs Service within ninety days of the date of the notice. Customs was not satisfied that the goods had been so exported, and on February 26, 1981, Customs assessed liquidated damages against Continental in the amount of $29,682.00. Customs later denied petitions for mitigation of the liquidated damages. Despite several demands for payment made on both the principal and surety, neither Continental nor National has paid the assessed damages. Plaintiff commenced the instant action on July 3, 1986.

Pursuant to USCIT R. 14(a), defendants have impleaded Saw Mill which agreed to purchase the subject shrimp for export from Ward Foods, Inc. ("Ward"), then a wholly-owned subsidiary of Continental. As part of that contract, it is asserted that Saw Mill agreed to "release" the third-party plaintiffs from all claims arising from the export of the merchandise. *Third–Party Complaint in Court No. 86–07–00834* at 2–3, ¶¶ 7, 9. Therefore, the third-party plaintiffs seek indemnification for any damages that they may owe to plaintiff as a result of this action. In response, Saw Mill denies that it agreed to indemnify Ward and moves for summary judgment dismissing the third-party plaintiffs' complaint. *Third–Party Defendant's Motion for Summary Judgment* at 3–4 (hereinafter "Third–Party Defendant's Motion" at ——).

In the portion of this opinion numbered (I) the Court discusses serially the defenses raised in opposition to plaintiff's motion for summary judgment. In section (II) of this opinion the Court treats the claim by third-party plaintiffs against Saw Mill.

### (I)

A. *Statute of Limitations*

■ The parties apparently agree,[1] that the applicable limitations period is six years as specified in 28 U.S.C. § 2415 (1982). *Di-Giorgio v. United States*, 8 CIT 192, 197 n. 9 (1984) (citing *United States v. Bavarian Motors, Inc.*, 4 CIT 83, 87 (1982)). They disagree, however, as to what event commences the running of the statute. Defendants, citing *United States v. Atkinson*, 6 CIT 257, 575 F.Supp. 791 (1983),[2] assert that the statute of limitations began to run on September 23, 1979, the date Continental's right to recondition the shrimp expired. *Defendants' Motion to Dismiss and for Summary Judgment* at 6. Additionally, defendants suggest that, as a policy matter, the notice of refusal of admission should not control the running of the statute since the government "could withhold the issuance of a notice of refusal of admission after a notice of sampling and detention was issued and thereby suspend the statute of limitations from ever running." *Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment* at 6 (hereinafter "Defendants' Response" at ——).

Plaintiff's claim arises out of an alleged failure to export the goods under Customs' supervision. The notice of refusal of admission required such exportation within ninety days after May 6, 1980. Assuming a failure to properly export, the claim accrued against defendants on August 5, 1980.[3] Hence, this action, commenced on

---

1. *Plaintiff's Motion* at 7, *Defendants' Motion to Dismiss and for Summary Judgment* at 3. Notwithstanding several erroneous references to a "six year statute of limitations specified by 28 U.S.C. § 2462," *see, e.g., Defendants' Answer in Court No. 86–07–00834* at 6 ¶ 5 (in fact § 2462 specifies a five year period), the Court proceeds, as does plaintiff, under the theory that defendants predicate their jurisdictional defense on the six year period specified in 28 U.S.C. § 2415.

2. The trial court's denial of motions for relief from judgment, leave to amend the answer, and an extension of time to appeal was affirmed in *United States v. Atkinson*, 3 Fed.Cir. (T) 15, 748 F.2d 659 (1984).

3. The statute of limitations should run from the date of the breach of the bond which occurred in this case upon failure to properly export. Defendants' policy argument, assuming *arguen-*

July 3, 1986, which is within six years of August 5, 1980, is timely.

Measured against the foregoing, the defendants' jurisdictional argument is patently deficient. As noted earlier, the breach here is a supposed failure to export under Customs' supervision. Plaintiff does not assert that the bond was breached by a failure to recondition, nor, as in *Atkinson*, 6 CIT at 258, 575 F.Supp. at 792–93, by a failure to redeliver the goods to Customs. *Atkinson* sets forth the broad principle that a cause of action accrues from the time the bond—or any contract—is breached. *See Atkinson*, 6 CIT at 260, 575 F.Supp. at 794. Further reliance on that decision, however, is misplaced since the failure to redeliver at issue in *Atkinson* is not analogous to the failure to recondition in the instant case. The unsuccessful effort to recondition did not create a cause of action in favor of plaintiff. Instead, liability under the bond arose in this case when defendants failed to comply with the explicit direction to export contained in the notice of refusal of admission.

### B. *Notice of Refusal of Admission*

Defendants contend that the notice of refusal is legally invalid since it was issued after liquidation of the goods in contravention of 19 C.F.R. § 141.113(f) (1987).[4] They further contend that the notice of sampling and detention and the notice of refusal of

admission are invalid because those documents were signed by an FDA official and not by a representative of the Department of the Treasury.

As a threshold matter, plaintiff responds by asserting that the Court is barred from considering these defenses. Since the demand for liquidated damages is a decision as to "charges or exactions" which is clearly protestable under 19 U.S.C. § 1514(a)(3) (1982), plaintiff argues that the defendants must file a timely protest to preserve any defense relating to the assessment of such damages. *See Plaintiff's Response to Defendants' Motion to Dismiss and for Summary Judgment* at 7 (hereinafter "Plaintiff's Response at ——").

Section 1514,[5] which authorizes the filing of protests with Customs, is an integral component of a statutory framework that envisions administrative review of protests, *see* 19 U.S.C. § 1515 (1982), and ultimately, judicial review of the administrative agency's denial of such protests. *See* 28 U.S.C. § 1581(a) (1982).[6] While § 1514(a) operates to prevent specified parties from invoking the Court's jurisdiction, as an initial matter, to contest decisions not timely protested, it is less obvious that the statute acts as a prophylactic against the attempt to raise issues defensively. *Cf. United States v. Zuber & Co.*, 9 CIT 511, 512 (1985) (although barred by § 1514 from instituting

---

*do* that it is properly the subject of consideration by this Court, is unpersuasive. If the government fails to issue the requisite notice, then a cause of action for failure to export under Customs' supervision will not lie. Additionally, the Court, contrary to defendants' intimations, does not presume that the government will deliberately withhold the notice of refusal of admission (assuming the goods do not qualify for admission) once notice of detention has been given.

4. **§ 141.113 Recall of merchandise released from Customs custody.**
   (f) *Time limitation.* A demand for the return of merchandise to Customs custody shall not be made after the liquidation of the entry covering such merchandise has become final.

5. 19 U.S.C. § 1514 (1982) provides for the protest of seven distinct categories of administrative decisions, § 1514(a)(1)–(7), by, *inter alia,* "the importers or consignees shown on the entry papers, or their sureties," § 1514(c)(1)(A),

within 90 days after the notice of liquidation or reliquidation, or if that is inapplicable, within 90 days after the date that the contested decision is made. § 1514(c)(2). "A protest by a surety which has an unsatisfied legal claim under its bond may be filed within 90 days from the date of mailing of notice of demand for payment against its bond." *Id.* Absent a properly filed protest or the commencement of an action contesting the denial of a protest, a decision specified in subsection (a) "shall be final and conclusive upon all parties (including the United States and any officer thereof)." § 1514(a).

6. 28 U.S.C. § 1581(a) provides:
   (a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

an action, importer may establish value and classification of merchandise in defending against action commenced pursuant to 19 U.S.C. § 1592). In short, the applicability of § 1514 to a case where jurisdiction properly arises under a statute other than 28 U.S.C. § 1581(a) presents an important question which has not been addressed at all by the parties.

Although cognizant of the discussion in *United States v. Bavarian Motors, Inc.*, 4 CIT 83, 85–86 (1982) of the time limitations upon a surety's right to protest a demand for liquidated damages, this Court understands the holding of that case to be that the government may not institute an action where a properly filed protest has yet to be reviewed by the administrative agency. *Id.* at 86. The precise issue in the case at bar did not confront the *Bavarian Motors* court. For that reason, and without questioning any statement contained in that opinion, this Court is reluctant to rely on *Bavarian Motors* as dispositive of the issue raised here.

In any event, the Court considers this case to be an inappropriate vehicle for the resolution of the issue presented. The lack of comprehensive briefing by the parties coupled with the potential for profound impact on the conduct of the administrative process provide cogent counsel against the Court's offering of a sweeping pronouncement on this matter. This approach is even more strongly suggested here, since the proffered defenses are devoid of merit, par-

ticularly in light of recent opinions of this Court.

This action concerns steps taken by plaintiff pursuant to 21 U.S.C. § 381(a) which authorizes the Secretary of the Treasury to destroy adulterated food unless exported under the prescribed regulations, *see* 19 C.F.R. §§ 12.4, 12.5, 18.25, 18.26 (1987), within ninety days of the date of notice of refusal of admission. Therefore, the requirement of § 141.113(f), which addresses redelivery of goods to Customs, is simply inapplicable here.

■ Moreover, this Court has recently distinguished the issue of admissibility under 21 U.S.C. § 381(a) from that of liquidation. In language that is fully applicable to the instant case, the Court has stated: "[t]he finality of liquidation for purposes of [19 U.S.C.] § 1514(a) cannot exonerate an importer or surety from its responsibility on the bond for failure to abide by the FDA directive to export the goods." *United States v. Utex Int'l Inc.*, 11 CIT ——, ——, 659 F.Supp. 250, 253 (1987) (footnote omitted) (Tsoucalas, J.), *appeal docketed*, No. 87–1414 (Fed.Cir. June 24, 1987); *see also United States v. Toshoku America, Inc.*, 11 CIT ——, ——, 670 F.Supp. 1006, 1010–11 (1987) (Tsoucalas, J.) (adhering to the holding of *Utex*).

■ Defendants' other objection regarding the validity of the notices must fail in light of the *Toshoku* decision.[7] In that

---

7. Defendants' answer challenges the validity of the notices on the basis that they had been issued subsequent to liquidation but does not question the authority of the officials who signed those notices. *See Defendants' Answer in Court No. 86–07–00834* at 5 ¶ 3. For that reason, plaintiff argues that USCIT R. 8(d) bars the Court from considering the latter issue. *See Plaintiff's Response* at 12–13.

"[T]here is a split in authority as to whether a defendant may, subsequent to filing an answer, move for summary judgment on the basis of an affirmative defense omitted from the answer." 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 8.28 at 8–206–8–207 (2d ed. 1987) (footnote omitted). This issue has divided both the courts, *compare Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984) (absent prejudice to opposing party, unpleaded defense may be raised) *with Musico v. Champion Credit Corp.*, 764 F.2d 102,

111 (2d Cir.1985) (defense not pleaded in amended answer deemed waived), and possibly leading commentators. *Compare* Moore's Federal Practice ¶ 8.28 at 8–207–8–208 (suggesting "better view" is to consider unpleaded defense) *with* 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1278 at 339 (1969) ("Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case.") (footnote omitted). The Court is aware of the decision in *Atkinson*, 6 CIT at 259, 575 F.Supp. at 793, holding that absent formal amendment an unpleaded defense may not be offered in connection with a summary judgment motion. Nevertheless, even assuming *arguendo* that the contents of defendants' answer are insufficient to raise the claimed defense for Rule 8(d) purposes, this Court need not address plaintiff's contention since, as explained in the text, this defense is doomed to fail. *See, e.g., SEC v. American Bd. of Trade,*

case, the Court emphasized the statutorily directed cooperation between Customs and the FDA and stated:

> [t]here is nothing in § 381(a) or in the Customs or FDA regulations that explicitly state which agency is actually to order exportation of the prohibited merchandise and nothing in the law or regulations prohibit this notice from . being issued by the FDA....
>
> ... Since there is no specific law or regulation which mandates that the notice to export must be duly generated from Customs or the FDA, the question then is whether this notice was reasonable.

*Toshoku*, 11 CIT at ——, 670 F.Supp. at 1011. In the absence of any issue as to the reasonableness of the notices, it is not of consequence that the notices were signed for the District Director of Customs, *id.*, and the Court concludes that they are valid.

### C. *Breach of the Bond*

■ The parties have offered, not surprisingly, conflicting statements regarding defendants' obligation to export the goods under Customs' supervision. While the plaintiff has supported its motion with affidavits from officials of the Customs Service, defendants, principally through the argument of counsel, insist that a fact question exists as to their compliance with the terms of the bond.

The Court observes that the defendants have failed to attach a "short and concise" statement of material facts not in issue either to their motion for summary judgment or to their opposition to plaintiff's motion. In such a situation, the contents of plaintiff's Rule 56(i) statement, including the contention that "Continental did not export or destroy the merchandise under Customs supervision," have not been controverted as required by Rule 56(i), and are deemed to be admitted. *See* USCIT R. 56(i) [8]; *DiGiorgio v. United States*, 8 CIT 192, 196 (1984).

The Court, in the instant case, declines to waive compliance with the Rules of Court. *Cf. Vivitar Corp. v. United States*, 8 CIT 109, 112 n. 8, 593 F.Supp. 420, 424 n. 8 (1984) (waiving full compliance with Rule 56(f)), *aff'd*, 3 Fed.Cir. (T) 124, 761 F.2d 1552 (1985), *cert. denied*, 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). This is not a case involving a technical violation of the Rules having no adverse impact. Nor is this a case where the offending party sought to rectify its noncompliance. *Cf. Daewoo Elecs. Co. v. United States*, 11 CIT ——, 655 F.Supp. 508 (1987).[9] The Court is not disposed to view the noncompliance in this case as a mere technical violation since the statement required by Rule 56(i) may aid in the isolation of undisputed issues by obviating the necessity to ferret out agreed upon facts from opposing

---

*Inc.*, 830 F.2d 431, 443 (2d Cir.1987) (no need to treat attempted appeal of trial court's denial of motion to amend answer as request for leave to file mandamus petition where substance of proposed amendment is without merit).

**8.** Rule 56(i) provides:

(i) ANNEXATION OF STATEMENT

Upon any motion for summary judgment, there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**9.** In *Daewoo* a summons was filed in violation of USCIT R. 11 and 81(c) because the attorney of record was not a member of the CIT bar at the time he signed the pleading. *Daewoo*, 11 CIT at ——, 655 F.Supp. at 509. Upon learning of the defect, the attorney promptly secured admission to the bar of this Court. The *Daewoo* court held that that failure to comply with the Rules of Court did not constitute a jurisdictional defect. *Id.* at ——, 655 F.Supp. at 511. Moreover, the court declined to impose any penalty on the attorney or his client, despite authorization of an "appropriate sanction" for violations of the Rule. In this regard, the court noted that "CIT Rule 11, by its terms, ... does not contemplate that non-compliance voids the filing of a pleading" at least where the defect is later remedied. *Id.* at ——, 655 F.Supp. at 512. Further, the court characterized the violation as "a mere technical defect which was promptly cured and which has neither prejudiced nor misled anyone." *Id.*

motion papers. Rule 56(i) demands the submission of an appropriate statement and specifies a penalty for noncompliance. Under the instant circumstances, the Court does not hesitate to apply its unambiguous terms.

While the Court views the instant failure to comply with the USCIT Rules as ample basis for its decision, it should be noted that review of all the documents submitted in this case reveals nothing to indicate a triable issue with regard to export of the goods under Customs' supervision. Defendants' counsel stress the significance of Transportation Entry No. 44509010. *See Defendants' Response* at 3. The mere fact of exportation from the United States, however, does not establish that such exportation occurred under Customs' supervision as that term is used in the applicable regulations. There is nothing to indicate that the shipment of the goods from the reconditioning facility to the port of export was performed under Customs' supervision. Indeed, as noted by plaintiff, there is nothing to indicate that the same goods which originally were entered at the Port of New York in July, 1979 were exported from the Port of Tampa, Florida in September, 1980. Also, no showing was made that exportation occurred within ninety days of the date of the notice of refusal of admission as required by statute.[10] To the contrary, on its face, the Transportation Entry suggests export was not timely. In sum, defendants' counsel have not defeated a properly supported summary judgment motion by simply directing the Court's attention, without anything more, to a document that upon examination fails to support the conclusion that timely export occurred under Customs' supervision.

### (II)

■ After tendering payment for the purchase of 350 cartons of shrimp for export, Saw Mill wrote to Ward, stating in material part: "[w]e at this time, wish to release Ward Foods, Inc. and Kitchens of the Ocean from any or all claims, costs, and= [sic] losses from the Foods [sic] and Drug Administration or Customs, which can occur from the export of this merchandise." *Third–Party Defendant's Motion,* Exhibit E. On the basis of this language, Saw Mill moves for judgment that, as a matter of law, it did not agree to indemnify defendants against plaintiff's claim.

For the purposes of the present summary judgment motion, it is not necessary to launch into an extended discussion of principles of the law of indemnification. In the Court's view, it is adequate to observe, at this stage, that the terms of the subject agreement are ambiguous. Therefore, extrinsic evidence must be received in order to determine the scope of this agreement, and to determine whether it constitutes a release or an agreement to indemnify. Accordingly, these matters are not ripe for determination by way of summary judgment. *See Bank of America Nat'l Trust & Sav. Ass'n v. Gillaizeau,* 766 F.2d 709, 714 (2d Cir.1985) (reversing grant of summary judgment where an ambiguity prevented the trial court from determining the scope of a confirmed release, or whether an agreement is in fact a release).

### Conclusion

Consistent with the foregoing, the Court grants plaintiff's motion for summary judgment against the defendants, and denies defendants' cross-motion. Judgment is awarded against Continental and National, jointly and severally, in the amount of $29,682.00. Prejudgment interest is awarded in accordance with the rate provided in 26 U.S.C. § 6621 (1982). *See Utex Int'l Inc.,* 11 CIT at ——, 659 F.Supp. at 254. In exercise of its discretion, the Court determines that prejudgment interest should be awarded from November 27, 1984. By that date, Continental had received notice that all mitigation proceedings were complete and both the principal and surety had received several demands for payment. Postjudgment interest is awarded in ac-

---

**10.** Although authorized by 21 U.S.C. § 381(a), no extensions of time were given to Continental to perform the exportation demanded by the notice of refusal of admission. *See Plaintiff's Motion,* Baish Affidavit at 2 ¶ 3.

**1488**

cordance with the rate in 28 U.S.C. § 1961(a) and (b) (1982). *Id.*

The third-party defendant's motion for summary judgment is denied and the Court will conduct further proceedings in order to resolve the third-party claim.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED and DECREED: that plaintiff's motion for summary judgment is granted; and it is further

ORDERED, ADJUDGED and DECREED: that defendants' cross-motion to dismiss and for summary judgment is denied; and it is further

ORDERED, ADJUDGED and DECREED: that third-party defendant's motion for summary judgment is denied; and it is further

ORDERED, ADJUDGED and DECREED: that judgment be, and hereby is, entered, jointly and severally, against the defendants in the amount of $29,682.00 together with postjudgment interest in accordance with 28 U.S.C. § 1961(a) and (b) and prejudgment interest from November 27, 1984 to be calculated in accordance with 26 U.S.C. § 6621.